UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOREN ROTHMAN,

                        Plaintiff,

                -against-

HASZ PROJECT MANAGEMENT AND DESIGN, d/b/a
HUDSON TRAILER COMPANY, and SUZANNE
HASZ,

                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: **06/24/2025**

No. 7:24-cv-03651-NSR

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Loren Rothman ("Rothman" or "Plaintiff"), a resident of Utah, commenced this action on March 29, 2024 in the Supreme Court of the State of New York, Orange County against Hasz Project Management and Design, d/b/a Hudson Trailer Company ("Hudson" or "Hudson Trailer Company") and its owner Suzanne Hasz ("Hasz") (collectively, "Defendants"). Plaintiff brought claims against both Defendants Hudson Trailer Company and Hasz for fraudulent inducement (Claim One) and negligent misrepresentation (Claim Two) and claims against Hudson only for breach of contract (Claim Three), unjust enrichment (Claim Four) and violations of New York General Business Law ("N.Y. GBL") for false advertising (§ 349) and deceptive acts or practices (§ 350) (Claims Five and Six, respectively) in connection to alleged misrepresentations and defective renovations of a vintage vehicle. After removing the action to this Court, Defendants move to dismiss Claims One, Two, Five and Six pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). Defendants also contend that Defendant Hasz should be dismissed from the action because, under New York law, she cannot be held liable for fraudulent acts.

      For the following reasons, Defendants' motion to dismiss is denied in its entirety.

## FACTUAL BACKGROUND

For the purpose of ruling on the instant motion to dismiss, the Court accepts as true all well-pleaded factual allegations in Plaintiff's complaint (ECF 1-1, "Compl.") as initially filed in Supreme Court of the State of New York, Orange County and draws all reasonable inferences in Plaintiff's favor, as summarized below.

Plaintiff founded his business, Stargazer Social Club ("Stargazer"), in 2022 to provide vintage vehicle mobile bar catering services for weddings and other private events. (*Id.* ¶¶ 15-18.) In or about September 2022, Plaintiff learned of Hudson and reached out to them to learn more about them and to determine if they could assist with the renovation of a vintage vehicle for Stargazer. (*Id.* ¶¶ 30-31.)

Plaintiff avers that Hudson represented on its website and social media account that it was "[t]he leader in luxury custom food trucks, mobile business trailers and custom lifestyle projects," and that Hudson emphasized fine craftsmanship, excellence, and superior quality. (*Id.* ¶¶ 18-23, 30.) After his review of the company's marketing materials, and discussions with Hasz and another representative of Hudson, Dave Langan, Plaintiff also learned that Hudson promoted "optimal performance [and] longevity" in its renovations. (*Id.* ¶¶ 24-26, 30-32, 40-48.) On or about November 1, 2022, Plaintiff messaged Defendants and raised the possibility of his purchasing a vintage Crown Supercoach school bus as the vehicle to renovate and convert to a luxury mobile bar and lounge. (*Id.* ¶ 41.) In response, on the same date, Hasz told Plaintiff "[s]ounds great and we would love to shift to that bus concept..." (*Id.* ¶ 42.)

Defendants assured Plaintiff that a Crown Supercoach would be a good candidate vehicle and represented that they would be able to perform specialized work such as Plaintiff's painting and design specifications, and that no additional subcontractors would be needed for the project. (*Id.* ¶¶ 40, 43.) Plaintiff and Hasz continued to discuss Plaintiff's desired features and requirements

for the renovation during a series of oral and written conversations, during which Defendants repeatedly assured Plaintiff that they could meet his requirements and achieve his goals. (*Id.* ¶¶ 44-45.) Plaintiff also exchanged text messages and phone calls with Dave Langan, another Hudson employee. (*Id.* ¶ 46.) Defendants represented that Rothman's renovated school bus would be "stunning," "beautiful," and include "superior material selection." (*Id.* ¶ 47.)

In addition to the renovation requirements, Plaintiff alleges that it was also important to him to receive an estimated timeline and estimated completion date, so he could start booking out clients as soon as possible. Hasz promised Plaintiff that she would give him a timeline once the project details were finalized and on or about October 3, 2022, Hasz wrote to Plaintiff and stated, "[w]e could start your project in December so you could have your build in the spring. We can give you a complete pricing proposal and timeline once we finalize all the details." (*Id.* ¶¶ 53-54.)

Plaintiff contends that he ultimately chose to work with Hudson Trailer Company, despite researching other vendors and receiving a lower quote from another renovation company, because of Defendants' representations, including Hasz's promise that she would provide a timeline once the project details were finalized. As a result, Plaintiff entered into a Services Agreement with Hudson on November 15, 2022. (*Id.* ¶¶ 49-51, 58-59.)

The Services Agreement outlined specific design features that Plaintiff discussed before signing and deemed necessary to use the vintage bus as a mobile bar and lounge. (*Id.* ¶¶ 69-70, 72-75.) These features included:

• A Bluetooth stereo system to allow visitors in the lounge area of the bus to listen to music even when the bus was turned off;

• The installation of a functioning kegerator and interior and exterior draft systems;

• The installation of "low profile AC and heat unit[s] built into the roof;"

• The installation of carpentry such as butcher-block countertops and wood wall paneling;

• A painted exterior; and

- An operable photo booth and printer build.

In January 2023, two months after signing the agreement and finalizing project details, Plaintiff had not yet received an estimated completion date. (*Id.* ¶ 62.) Despite Hasz's earlier representation that she would provide a timeline once project details were finalized, when Plaintiff inquired, Hasz stated that she could not provide a timeline or completion date because "there were too many factors to still consider, and a completion date could be provided after they were 'well into the renovation.'" (*Id.* ¶ 63.) Plaintiff received the estimated completion date about three months later, in April 2023. (*Id.* ¶ 64.)

On June 1, 2023, Plaintiff arrived in Florida to inspect and pick up his renovated vintage bus. (*Id.* ¶¶ 83-86.) Plaintiff alleges that shortly into his drive back to his residence in Utah, he began to discover defects in the renovation and, in turn, breaches of the Services Agreement. (*Id.* ¶ 87.) During the drive, Plaintiff discovered that he could not play the Bluetooth speaker and stereo system while the bus was turned off, as he was promised under the Services Agreement. (*Id.* ¶¶ 89-90.) When he returned to Utah, Plaintiff found, *inter alia*, other defects in the renovation. Plaintiff alleges that Defendants installed an incorrect model of the kegerator and that it was improperly fastened, which caused floor damage and malfunctions due to improper ventilation. (*Id.* ¶¶ 91-96.) Plaintiff informed Defendants of these defects and Plaintiff continued to uncover additional issues that ran afoul of the Services Agreement. (*Id.* ¶¶ 98-101.) Plaintiff discovered that (i) the carpentry work contained large gaps, jagged edges, and lacked spill protection on the counters; (ii) the bus's air-conditioning units were improperly wired, causing the circuit breaker to trip; (iii) the photobooth and printer were inoperable and had incompatible operating systems; (iv) the internal tap system was improperly installed; (v) and the heating units were not working because Hudson Trailer Company only installed air conditioning units instead of dual heating and cooling units; and (vi) parts of the roof were either left unpainted or were painted too thin and

improperly sealed, causing water intrusion and damage around the installed air conditioning units. (Compl. ¶¶ 97-113.)

To avoid losing potential business as a result of the defects, Plaintiff has paid for repairs with other vendors and is projected to spend a total of more than $60,000 to correct the defects that were allegedly caused by Hudson's breaches of the Services Agreement. (*Id*. ¶ 115.) Plaintiff asserts that he has made Defendants aware of the defects outlined above and has been unable to resolve this dispute. (*Id*. ¶¶ 116-118.)

Based on the foregoing, Plaintiff brought claims in state court on March 29, 2024 against both Defendants Hudson Trailer Company and Hasz for fraudulent inducement (Claim One) and negligent misrepresentation (Claim Two) and claims against Hudson only for breach of contract (Claim Three), unjust enrichment (Claim Four) and violations of New York General Business Law ("N.Y. GBL") for false advertising (§ 349) and deceptive acts or practices (§ 350) (Claims Five and Six, respectively).

After removing the case from state court on May 13, 2024, Defendants filed a motion to dismiss ("Mot," ECF No. 14) and Plaintiff filed an opposition brief ("Pl. Opp.," ECF No. 15).

## LEGAL STANDARDS

*Federal Rule of Civil Procedure 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw

reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ... and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Defendants move to dismiss claims against both Hudson Trailer Company and Hasz for fraudulent inducement (Claim One) and negligent misrepresentation (Claim Two) and Plaintiff's claims against Hudson Trailer Company only for violations of § 349 (false advertising) and § 350 (deceptive acts or practices) of N.Y. G.B.L. (Claims Five and Six, respectively). For the reasons that follow, the Court denies Defendants' motion to dismiss in its entirety.

## I.    Defendant Hasz's Liability under New York Law

As an initial matter, Defendants contend that Hasz cannot be held liable for fraudulent acts under New York law and, therefore, the Plaintiff's claims for fraudulent inducement and negligent misrepresentation against Hasz should be dismissed. Under New York law, although the officers and directors of a corporation "cannot be held individually liable for their company's obligations," officers and directors of a corporation, like Hasz, "may be held liable for fraud if they participate in it or have actual knowledge of it." *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) (brackets,

quotation marks, and citations omitted); *see Stillman v. De Vos*, No. 23-CV-7802 (JPC), 2024 WL 3797071, at *3 (S.D.N.Y. Aug. 13, 2024) ("In particular, a corporate officer is individually liable for fraudulent acts or false representations of his own, or in which he participates, even though his actions in such respect may be in furtherance of the corporate business." (citation omitted)).

Here, Plaintiff met with Hasz directly in September 2022 to discuss his renovation project. (Compl. ¶¶ 21-26, 31.) The Complaint avers that throughout the initial meeting and subsequent discussions with Hasz, Hasz assured Plaintiff that Hudson would be able to meet his requirements, achieve his renovation goals, and complete his specialized design specifications. (Compl. ¶¶ 39-40.) When Plaintiff informed Hasz on November 1, 2022, that he was considering the purchase of a vintage school bus for the renovation, Hasz individually responded "[s]ounds great and we would love to shift to that bus concept…." (*Id.* ¶¶ 41-42.) Hasz repeatedly assured Plaintiff that the renovation would be "beautiful" and never once stated that Hudson Trailer Company lacked the experience to handle a renovation of that scale. (*Id.*¶¶ 44-45, 47-48.) Further, on October 3, 2022, Hasz informed Plaintiff that the Hudson Trailer Company "could start [his] project in December so you could have your build in the spring. We can give you a complete pricing proposal and timeline once we finalize all the details." (*Id.* ¶ 54.) However, after Plaintiff signed the Services Agreement, Hasz refused to provide a timeline or estimated completion date as "[w]e don't give completion dates this early on in the project as there are many factors that relate to the final date. We can give you a better idea when we are well into the renovation." (*Id.* ¶ 63.) Plaintiff alleges that Defendants' representation about Hudson's expertise, its ability to fulfill Plaintiff's specific design requirements, and that Plaintiff would receive an estimated timeline or completion date for the renovation, are what induced Plaintiff into hiring the Defendants. (*Id.* ¶¶ 55-56, 58.) Hasz's representations regarding Hudson Trailer Company's ability to handle the renovation and provide

a timeline were made to Plaintiff before he entered into a Services Agreement with Hudson Trailer Company. (*Id.* ¶ 59.) Since Hasz, an officer of Hudson Trailer Company, made these alleged fraudulent representations to Rothman and participated in these alleged fraudulent acts as a means to secure Plaintiff's business, she can be held personally liable for her fraudulent activities under New York law. Now that the Court has established that Hasz can be held liable, the Court continues its analysis by turning to Plaintiff's fraud claims against both Defendants.

## II.    Claims Three and Four – Fraudulent Inducement and Negligent Misrepresentation

Plaintiff seeks to hold both Defendants liable for fraudulent inducement and negligent misrepresentation based on what he alleges were misrepresentations to induce him to enter into a contract with Hudson. (Compl. ¶¶ 76-89 (Counts Five and Six).) To plead a claim for fraudulent inducement, a plaintiff must allege: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Baker-Rhett v. Aspiro AB*, 324 F. Supp. 3d 407, 418-19 (S.D.N.Y. 2018) (quoting *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006)). For negligent misrepresentation, "the plaintiff must allege that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 175 (S.D.N.Y. 2022) (quoting *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012)).

Here, the Defendants challenge Plaintiff's fraudulent inducement and negligent misrepresentation claims on the ground that they are duplicative of his breach of contract claim

against Hudson. (Mot. at 2–4.) Defendants further contend that the Complaint simply does not allege "material misrepresentations to support" its fraud claims. (*Id.* at 5.) The Court disagrees and denies Defendants' motion on the basis of these claims.

Under New York law, "[i]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 460 (N.Y. 2018) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 439 F. Supp. 3d 275, 282 (S.D.N.Y. 2020) (explaining that when a "plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory" (citation omitted)). Accordingly, "where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (quoting *Sudul v. Computer Outsourcing Servs.*, 868 F. Supp. 59, 62 (S.D.N.Y. 1994)); *see also Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) ("As a general matter, a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract. Thus, general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support a fraud claim." (cleaned up)). These principles apply just as forcefully to claims for negligent misrepresentation. *See Michael Davis Constr., Inc. v. 129 Parsonage Lane, LLC*, 149 N.Y.S.3d 118, 122 (2nd Dep't 2021) ("[A] negligent misrepresentation claim will be found to be duplicative of a breach of contract claim where the pleading fails to allege facts that would give rise to a duty that is independent from the parties' contractual obligations."). Accordingly, where a tort claim

for misrepresentation appears to duplicate a breach of contract claim, courts have held that "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted).

Plaintiff argues that his fraudulent misrepresentations claims should be upheld as the alleged fraudulent misrepresentations were made prior to the formation of the contract and were "extraneous" to the contract, and therefore not duplicative. *See Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) (citing *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2d Cir. 1979)) (holding that a valid fraud claim can be premised on misrepresentations made before the contract's formation and that caused the plaintiff to enter into the contract). Here, Plaintiff's fraudulent inducement and negligent misrepresentation claims stem from certain representations that were made by the Defendants that induced Plaintiff to enter into the Services Agreement with Hudson Company. (Compl. ¶¶ 120-149.) These included Defendants' assurances to Plaintiff that Defendants would be able to meet Plaintiff's stated goals; had the experience and resources to do so; would perform the work specifically as requested by Plaintiff and would provide a timeline once all contract details were finalized. (*Id.* ¶ 60.) Plaintiff also alleges that Defendants falsely represented to Plaintiff that the Hudson Trailer Company (i) was a leader in the field of converting vintage vehicles to mobile businesses; (ii) was a "purveyor of fine craftsmanship, excellence, and superior quality;" (iii) selects "superior material" amongst other things to "create renovations that are stunning and highly functional;" and (iii) that their renovations provide "optimal performance [and] longevity." (Compl. ¶¶ 21-25.) Plaintiff attributes these representations as the reason he

ultimately chose to hire Hudson instead of other companies that he similarly researched. (*Id.* ¶¶ 51, 56, 58, 60.)

By contrast, Plaintiff's breach of contract claim is grounded in the Defendants' specific breaches of the November 15, 2022 Services Agreement by way of hidden defects and Hudson's failure to perform other agreed-upon obligations. (Compl. ¶¶ 150-158.) The alleged breaches include the Bluetooth speaker and stereo system not functioning while the bus was turned off and an incorrect model of kegerator being improperly installed and which caused floor damage and was malfunctioning due to improper ventilation. (*Id.* ¶¶ 90-96.) The Complaint also avers that, for example, Hudson Trailer Company failed to (1) install a fully functional stereo unit, (2) install five ceiling mounted speakers, (3) properly fasten the kegerator, (4) provide professional-quality carpentry, (5) supply or install proper electrical and plumbing components, (6) install heating units, (7) provide a functioning photo booth and printer, (8) install bench seating and undercounter cabinetry, (9) fully and adequately paint the bus, (10) install counter spill protection and (11) properly frame and seal the mounting surfaces for the air conditioning units. (*Id.* ¶ 156.)

In short, the allegations in support of Plaintiff's fraud claims are not completely subsumed by the contract claims as Defendants argue. Representations involving the project timeline and completion date, for example, are separate from Defendants' specific obligations to perform under the agreement. The Court concludes that Plaintiff's misrepresentation claims are not duplicative of its a breach of contract claim as Plaintiff has sufficiently plead that the fraudulent misrepresentations are collateral or extraneous to the Services Agreement. Accordingly, the Court denies Defendants' motion to dismiss Claims One and Two, for fraudulent inducement and negligent misrepresentation, respectively, against both Defendants.

**III. Claims Five and Six – N.Y. G.B.L. §§ 349 and 350**

Finally, Defendants seek to dismiss Plaintiff's fifth and sixth claims under N.Y. G.B.L. §§ 349 and 350, for false advertising and deceptive practices, respectively, because they contend that these claims do not adhere to the pleading requirements under Federal Rule of Civil Procedure 9(b). Contrary to Defendants' assertions, Plaintiff's N.Y. G.B.L. claims are "not subject to the pleading-with-particularity requirements of Rule 9(b)" and "need only meet the [ordinary pleading] requirements of Rule 8(a)." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005); *accord Velez v. Lasko Prod., LLC*, No. 1:22-CV-08581 (JLR), 2023 WL 8649894, at *2 (S.D.N.Y. Dec. 14, 2023); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608, 612 (2000) ("A deceptive practice ... need not reach the level of common-law fraud to be actionable under section 349.").

Section 349 of the N.Y. G.B.L. provides a cause of action for any person injured by "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law §§ 349(a), (h). "'Deceptive acts' are acts that are 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)). Section 350 of the N.Y. G.B.L. prohibits "[f]alse advertising in the conduct of any business, trade or commerce," and is analyzed under the same "reasonable consumer" standard as Section 349. *Id.* (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).

To state a claim under either § 349 or 350 of the N.Y. G.B.L., "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice."

*Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall &*
*Condit Co.*, 18 N.Y.3d 940, 944 N.Y.S.2d 452, 967 N.E.2d 675, 675 (2012)); *see also Crawford*
*v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014). The Court finds that Plaintiff
has adequately alleged all three elements of a claim under §§ 349 and 350.

A.          *Consumer-Oriented Conduct*

Here, Defendant's alleged statements about being the premier contractor for refurbishing
vintage vehicles and trailers into luxury mobile businesses ran both online and on social media and
were aimed towards potential customers in search of similar renovations. (Compl. ¶¶ 179-180).
This qualifies as "consumer-oriented conduct." *Koch*, 944 N.Y.S.2d 452, 967 N.E.2d at 675
(citation omitted). "The 'consumer-oriented' requirement may be satisfied by showing that the
conduct at issue 'potentially affects similarly situated consumers.'" *Wilson v. Nw. Mut. Ins. Co.*,
625 F.3d 54, 64 (2d Cir. 2010) (brackets omitted) (quoting *Oswego Laborers' Loc. 214 Pension*
*Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 745
(1995)). "This requirement is liberally construed." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp.
3d 83, 94 (S.D.N.Y. 2021). The potential to affect similarly situated consumers clearly exists here,
and, indeed, neither party disputes this fact in their briefing.

B.          *Materially Misleading*

Plaintiff sufficiently alleges that Defendant's representations are "materially misleading."
*Koch*, 944 N.Y.S.2d 452, 967 N.E.2d at 675 (citation omitted). "New York courts apply an
objective standard in determining whether acts or practices are materially deceptive or misleading:
whether the alleged act is likely to mislead a reasonable consumer acting reasonably under the
circumstances." *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022). "To survive a
motion to dismiss, a plaintiff must do more than plausibly allege that a label might conceivably be

misunderstood by some few consumers." *Id.* Instead, "a plaintiff must plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* "Although the question of whether a business practice or advertisement is misleading to a reasonable consumer is generally a question of fact, it is well settled that a court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer." *Fuller v. Stop & Shop Supermarket Co. LLC*, No. 22-CV-9824 (CS), 2023 WL 8005319, at *3 (S.D.N.Y. Nov. 17, 2023) (quoting *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021)). Plaintiff identifies several allegedly deceptive statements on Defendants' website and social media that make the basis of his claims, including statements noting that Hudson was "[t]he leader in luxury custom food trucks, mobile business trailers and custom lifestyle projects." (Compl.  ¶ 23.) Defendants' website and marketing materials also contained statements where Hudson represented itself as an expert in "vintage vehicle renovation, purveyor of fine craftsmanship, excellence, and superior quality." (*Id.*  ¶¶ 18-23, 30.)

C.          *Plaintiff Suffered Injury as a Result*

Plaintiff suffered an injury as a result of Defendants' alleged misrepresentations. To plead an injury pursuant to either § 349 or 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *See e.g.*, *Orlander v. Staples, Inc.*, 802 F.3d 289, 301 (2d Cir. 2015); *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350-51 (S.D.N.Y. 2020). Plaintiff alleges that in reliance of Defendants' internet/digital and oral representations, he executed a contract with Hudson Trailer Company for services.  Pursuant to the contract, Plaintiff paid Hudson Trailer Company $127,553 for services that were determined to be alleged substandard renovations. Further, based on Defendants' false and misleading representations, Plaintiff is projected to spend more than $60,000 to correct the

defects that were allegedly caused by Hudson Trailer Company, despite Defendants repeated assurances that they were an expert in "vintage vehicle renovation, purveyor of fine craftsmanship, excellence, and superior quality." (Compl.  ¶¶ 23, 115.) Accordingly, Plaintiff has sufficiently supported that he suffered an injury as a result of Defendants' alleged misrepresentations.

## CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is DENIED in its entirety. Defendants are directed to answer the Complaint by July 15, 2025, and the parties are directed to confer and file a Case Management Plan and Scheduling Order (blank form attached) by August 5, 2025. The Clerk of Court is respectfully directed to terminate the motions at ECF No. 14.

Dated:  June 24, 2025                                         SO ORDERED
           White Plains, New York

                                                                   _____
                                                                   HON. NELSON S. ROMÁN
                                                                   United States District Judge, SDNY

UNITED STATES DISTRICT COURT                           Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x


                                                    **CIVIL CASE DISCOVERY PLAN**

                              Plaintiff(s),          **AND SCHEDULING ORDER**

          - against -



                              Defendant(s).      _____ CV _____ (NSR)



----------------------------------------------------------------x


 This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel,
pursuant to Fed. R. Civ. P. 16 and 26(f):


1.      All parties [consent] [do not consent] to conducting all further proceedings before a
        Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The
        parties are free to withhold consent without adverse substantive consequences.  (If all
        parties consent, the remaining paragraphs of this form need not be completed.)


2.      This case [is] [is not] to be tried to a jury.


3.      Joinder of additional parties must be accomplished by _____.


4.      Amended pleadings may be filed until _____.


5.      Interrogatories shall be served no later than _____, and responses
        thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil
        Rule 33.3 [shall] [shall not] apply to this case.

6.    First request for production of documents, if any, shall be served no later than
_____.

7.    Non-expert depositions shall be completed by _____.

    a.    Unless counsel agree otherwise or the Court so orders, depositions shall not be
held until all parties have responded to any first requests for production of
documents.

    b.    Depositions shall proceed concurrently.

    c.    Whenever possible, unless counsel agree otherwise or the Court so orders, non-
party depositions shall follow party depositions.

8.    Any further interrogatories, including expert interrogatories, shall be served no later than
_____.

9.    Requests to Admit, if any, shall be served no later than _____.

10.    Expert reports shall be served no later than _____.

11.    Rebuttal expert reports shall be served no later than _____.

12.    Expert depositions shall be completed by _____.

13.    Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.    **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.    Any motions shall be filed in accordance with the Court's Individual Practices.

16.    This Civil Case Discovery Plan and Scheduling Order may not be changed without leave
of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.    The Magistrate Judge assigned to this case is the Hon. _____.

18.     If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.     The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York

          _____

                               _____

                               Nelson S. Román, U.S. District Judge